UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

GEORGE D. METZ II  PRO SE

Civil Case No. 9:23-cv-06511-DCC-KFM

Plaintiff,

vs.

MICHAEL SMITH,

Defendant

## PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE REPORT AND RECOMENDATIONS

COME NOW, Plaintiff GEORGE METZ, by and through him self as Pro Se, to object to the magistrate report and recomendation.

### OBJECTIONS TO MAGISTRATE REPORT AND RECOMENDATION

**FIFTH AMENDMENT CLAIM**

My fifth amendment claim was based off the fact that the defendant compelled me to answer his question under threat of arrest.

Defendant: Who do you work for?

Plantiff: I'm remaining silent and taking the 5th.

Defendant: Alright i'm going to place you under arrest, how about that.

I'm confused because my complaint states clearly that my fifth amendment claim was based off me not answering questions. It said nothing about Identification or Miranda rights. The fact that my statement wasn't used in a criminal prosecution means nothing. I have a right to not answer questions, compelling me with arrest violates my right to remain silent.

The fifth amendment is triggered when compelled to answer questions and you are not free to leave, as was in this case here.

### FOURTH AMENDMENT CLAIM

The fourth amendment claim was based on the defendant compelling me to identify even though no reasonable suspicion was present. Both conditions the magistrate cites, the unlawful recording inside and not leaving were both non existant when the defendant had arrived. I was outside recording. And while a 911 call can provide reasonable suspicion, only when the allegations rise to the level of criminal activity. In this case, recording in a public area of a public building does in no way rise to a criminal level, nor does asking me to leave and me refusing.

> *"It follows that since Section 16-388 applies only to private property, a conviction thereunder for an alleged trespass upon public property is not warranted and cannot be sustained."* State v. Hanapole, 255 S.C. 258, 268 (S.C. 1970)

The defendant accosted me and told me that recording the public building was illegal and that if I didn't stop he would arrest me. As I went to leave he then demanded my ID, at no point did he ever state a crime he suspected me of. As is common knowledge, recording a public building from outside is not illegal.

### FIRST AMENDMENT CLAIM

My first amendment claim is brought under free press and not free speech, as such there is no need to identify the nature of the forum because recording is a non expressive step in the speech process. It is regulated by the right to gather information/ right of access which is the same right to access as the general public. I absolutely have a right to record anywhere the

public is allowed where there is no expectation of privacy. A public lobby of the health department being such a place. The defendant trespassing me, even though the trespassing statute dont allow for trespassing on public property, under threat of arrest was a violation of my right to gather information. Quoting Heffron does nothing as I was not trying to communicate any views at the time of my recording. My prior restraint claim was based upon the defendant compelling me to shut off my camera during the interaction, thus trying to stop me from recording government agents trying to intimidate me from exercising my rights.

## RETALIATION CLAIM

1. The right to free press and to gather information on our public officials is and always has been a protected activity.

2. By compelling me to shut off my camera and leave property i was lawfully allowed to be on, the defendant adversely affected my first amendment rights.

3. There was a direct, not just casual relationship between my protected activity and the defendants conduct, as noted without me exercising my protected right there would of been no reason for defendants conduct at all. Defendants conduct was a direct response to my protected activity.

> *As the Supreme Court has observed, "the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." First Nat'l Bank v. Bellotti, 435 U.S. 765, 783, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); see also Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) ("It is ... well established that the Constitution protects the right to receive information and ideas."). An important corollary to this interest in protecting the stock of public information is that "[t]here is an undoubted right to gather news 'from any source by means within the law.'" Houchins v. KQED, Inc., 438 U.S. 1, 11, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (quoting Branzburg v. Hayes, 408 U.S. 665, 681–82, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)).*
>
> *The filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within these principles. Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting "the free discussion of governmental affairs." Mills v. Alabama, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). Moreover, as the Court has noted, "[f]reedom of expression has particular significance with respect to government because '[i]t is here that the state has a special incentive to repress opposition and often wields a more effective power of suppression.'" First Nat'l Bank, 435 U.S. at 777 n. 11, 98 S.Ct. 1407 (alteration in original) (quoting Thomas Emerson, Toward a General Theory of the First Amendment 9 (1966)). This is particularly true of law enforcement officials, who are granted substantial discretion that may be misused to deprive individuals of their liberties. Cf. Gentile v. State Bar of Nev., 501 U.S. 1030, 1035–36, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (observing that "[t]he public has an interest in [the] responsible exercise" of the discretion granted police and prosecutors). Ensuring the public's right to gather information about their officials not only aids in the uncovering of abuses, see id. at 1034–35, 111 S.Ct. 2720 (recognizing a core First Amendment interest in "the dissemination of information relating to alleged governmental misconduct"), but also may have a salutary effect on the functioning of government more generally, see Press–Enter. Co. v. Superior Court, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (noting that "many governmental processes operate best under public scrutiny").*

*Glik v. Cunniffe, 655 F.3d 78, 82-83 (1st Cir. 2011)*